# Illinois Official Reports

## Appellate Court

---

### *People v. Gordon*, 2019 IL App (5th) 160455

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RICHARD L. GORDON, Defendant-Appellant. |
| | |
| District & No. | Fifth District<br>No. 5-16-0455 |
| | |
| Rule 23 order filed<br>Motion to<br>publish allowed<br>Opinion filed | October 16, 2019<br><br>November 4, 2019<br>November 4, 2019 |
| | |
| Decision Under Review | Appeal from the Circuit Court of Fayette County, No. 16-CF-141; the Hon. M. Don Sheafor Jr., Judge, presiding. |
| | |
| Judgment | Affirmed in part and vacated in part. |
| | |
| Counsel on Appeal | James E. Chadd, Ellen J. Curry, and Elizabeth M. Crotty, of State Appellate Defender's Office, of Mt. Vernon, for appellant.<br><br>Joshua Morrison, State's Attorney, of Vandalia (Patrick Delfino, Patrick D. Daly, and Valerie A. Ozment, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |

PRESIDING JUSTICE OVERSTREET delivered the judgment of the court, with opinion.
           Justices Barberis and Boie concurred in the judgment and opinion.


**OPINION**

¶ 1     The defendant, Richard L. Gordon, appeals his August 22, 2016, conviction, following a jury trial in the circuit court of Fayette County, of obstructing justice (720 ILCS 5/31-4(a) (West 2016)). He contends that the State was required to show that his conduct of furnishing false information resulted in a material impediment to the administration of justice but failed to make such a showing. He further contends that his conviction should be reduced to obstructing identification (*id.* § 31-4.5), that his sentence was excessive, and that the public defender reimbursement fee should be vacated outright because the circuit court erred by imposing the fee, without first conducting a hearing in compliance with section 113-3.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3.1(a) (West 2016)). For the following reasons, we affirm the conviction and vacate the public defender reimbursement fee.

¶ 2                              I. BACKGROUND
¶ 3     On June 22, 2016, the defendant was charged, by information, with, *inter alia*, obstructing justice (720 ILCS 5/31-4(a) (West 2016)).[1] The information alleged that the defendant knowingly, with the intent to prevent his apprehension, provided false information to Deputy Bob Fritcher by telling him that his name was Brian Lynn Watson and that his birthdate was June 9, 1971. On July 28, 2016, the defendant filed a motion to dismiss, alleging that the offense should have been charged as obstructing identification (*id.* § 31-4.5)—a misdemeanor—and requesting the circuit court to dismiss the obstructing justice charge (*id.* § 31-4(a))—a felony. On August 16, 2016, after a hearing, the circuit court denied the motion to dismiss. A jury trial was held on August 22, 2016. Our recitation of the evidence presented at trial is limited to that which is relevant to obstructing justice—the only charge at issue on appeal.

¶ 4     Bob Fritcher testified that he is employed as a deputy with the Fayette County sheriff's department and has been working in law enforcement for approximately eight years. Fritcher testified that he was on duty on June 21, 2016, conducting routine patrol, when he observed a white car with a license plate that was covered in dirt and, therefore, illegible. Fritcher testified that he conducted a traffic stop and that it took approximately one-half mile for the defendant—who was driving the vehicle—to pull over. When the defendant stopped, Fritcher exited his patrol car, approached the vehicle, and advised the defendant that he could not read the license plate because it was covered in dirt.

¶ 5     Fritcher testified that the traffic stop was videotaped by the body camera that he wears and activates with every traffic stop. After the traffic stop involving the defendant was concluded, Fritcher downloaded the video footage from the body camera onto a DVD, which the sheriff's department forwarded to the state's attorney. State's exhibit 1 was introduced, and Fritcher

---

[1]The defendant was charged with additional offenses that are not subject to this appeal.

identified it as the DVD of the defendant's traffic stop. The DVD was played for the jury without objection. The video depicts, *inter alia*, the defendant stating multiple times that he had no identification and confirms the testimony presented at trial.

¶ 6 Fritcher testified that the defendant told him that his name was "Brian Lynn Watson" and that his birthdate was June 9, 1971. Fritcher entered this information into his computer, which yielded no record of any such person. Accordingly, to confirm the spelling, Fritcher again approached the defendant and instructed him to write down the information. After obtaining the written information from the defendant, Fritcher provided it to the dispatcher, who ran it through the database, which also returned no record of any such individual. Fritcher testified that he relayed the information to the dispatcher to ensure that he had not made a mistake or missed anything.

¶ 7 Fritcher explained that people usually lie about their names to avoid being arrested when they have outstanding warrants. When the dispatcher confirmed that there was no record of an individual named Brian Lynn Watson with a birthdate of June 9, 1971, Fritcher approached the defendant a third time and conducted a pat-down for weapons. During the pat-down, Fritcher detected what he recognized as a wallet and asked the defendant for permission to remove it. The defendant consented. Fritcher testified that he removed the wallet, opened it, and discovered an Illinois identification card bearing the name "Richard Gordon." After running the name Richard Gordon through the database, Fritcher discovered that the defendant had an outstanding Shelby County warrant and a revoked driver's license. Fritcher testified that the owner of the vehicle, Angela Hitsman, was occupying the front passenger's seat at the time of the traffic stop and Hitsman's minor child was a passenger in the back seat. Fritcher testified that, after the defendant was arrested, contraband was discovered in the back floorboard of the vehicle via a K-9 alert.

¶ 8 Ronnie Stevens testified that he is employed as a deputy and K-9 handler for the Fayette County sheriff's department and has been working in law enforcement for over 10 years. Stevens testified that he was on duty on the date in question and responded to the traffic stop involving the defendant. Stevens confirmed that Fritcher performed a traffic stop on the vehicle for a license plate violation. When Stevens arrived at the scene, he learned that the defendant had provided a name that returned no record. Accordingly, Stevens advised Fritcher to instruct the defendant to write the name down. Stevens testified that the defendant complied and the database again yielded no such person. Stevens indicated that when names come back with no record, the subjects are lying to hide the fact that they are wanted or that they have no driver's license. Stevens testified that the defendant was arrested for "obstruction of identification" and that contraband was subsequently found in the vehicle via a K-9 alert.

¶ 9 After deliberations, the jury found the defendant guilty of obstructing justice (*id.*). Defense counsel filed a motion for a judgment notwithstanding the verdict or, in the alternative, a new trial. The motion alleged, *inter alia*, that the defendant should have been charged with obstructing identification (*id.* § 31-4.5), because there was insufficient evidence to support the charge and conviction of obstructing justice (*id.* § 31-4(a)). The circuit court denied the motion and sentenced the defendant to a 30-month prison term, with one year of mandatory supervised release. At the sentencing hearing, after imposing the sentence for the obstructing justice conviction (see *id.*), the circuit court informed the defendant, "You'll be given credit for any time that you have served up to this point and be ordered to pay court costs as a result of this

case." The circuit court subsequently asked, "State, do you have a cost sheet you are working on?" The State replied, "That's what I'm working on."

¶ 10 After admonishing the defendant regarding his rights to appeal, the circuit court inquired, "State, the cost sheet?" The State replied that it was calculating the defendant's dates in custody for which he would be credited. The circuit court informed the defendant, "In just a minute we'll have the cost sheet done to tell you your final fees and costs." The circuit court subsequently informed the defendant: "Your fines, fees and costs *** in the felony case are $452. There will also be some costs added in on the traffic matters. They won't be this high, I don't think, so 30 days upon your release you'll have to report back here *** to set up a payment plan." The cost sheet itemized, *inter alia*, a $100 public defender reimbursement fee. The cost sheet was filed 12 days later and reflects total costs in the amount of $514.50. The defendant filed a timely notice of appeal.

¶ 11 II. ANALYSIS

¶ 12 The defendant raises the following issues on appeal: (1) whether his conviction of obstructing justice should be reversed because his conduct of providing false information did not materially impede his apprehension, (2) whether his conviction of obstructing justice should be reduced to obstructing identification, (3) whether his 30-month prison sentence is excessive, and (4) whether the fee imposed by the circuit court to reimburse the public defender should be vacated for lack of a hearing, pursuant to section 113-3.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3.1(a) (West 2016)).

¶ 13 A. Sufficiency of the Evidence

¶ 14 The first issue on appeal is whether the defendant's conviction for obstructing justice should be reversed because his giving the false name and date of birth did not materially impede his apprehension. The defendant contends that the State did not prove beyond a reasonable doubt that he obstructed justice because the officer discovered within minutes that the information was false, then searched the defendant, discovered his wallet—which contained his identification card bearing his correct information, and placed him under arrest within 10 minutes thereafter. "Where a criminal conviction is challenged based on insufficient evidence, a reviewing court, considering all of the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime." *People v. Brown*, 2013 IL 114196, ¶ 48. "[A] criminal conviction will be reversed where the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt." *Id.*

¶ 15 We are mindful that, under a challenge to the sufficiency of the evidence, " 'a reviewing court must allow all reasonable inferences from the record in favor of the prosecution.' " *People v. Saxon*, 374 Ill. App. 3d 409, 416 (2007) (quoting *People v. Bush*, 214 Ill. 2d 318, 326 (2005)). "This standard of review applies in cases whether the evidence is direct or circumstantial." *Id.* " 'When weighing the evidence, the trier of fact is not required to disregard inferences that flow from the evidence, nor is it required to search out all possible explanations consistent with innocence and raise them to a level of reasonable doubt.' " *Id.* (quoting *People v. McDonald*, 168 Ill. 2d 420, 447 (1995)). "It is not the function of this court to retry the defendant." *People v. Rendak*, 2011 IL App (1st) 082093, ¶ 29. "Instead, it falls upon the trier

of fact to judge the credibility of witnesses, resolve conflicts in the evidence, and draw conclusions based on all the evidence." *Id.*

¶ 16 Section 31-4(a)(1) of the Criminal Code of 2012 provides, in relevant part: "(a) A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution *** of any person, he *** knowingly commits any of the following acts: (1) *** furnishes false information[.]" 720 ILCS 5/31-4(a)(1) (West 2016). Here, the information charged the defendant with obstructing justice, in that he knowingly and with the intent to prevent his arrest, provided false information to Deputy Fritcher by giving him a false name and date of birth. The defendant does not suggest that the State failed to prove the elements of the statute, *i.e.*, that he provided false information with the intent to prevent his arrest. See *id.* Rather, he argues that his conviction for obstructing justice must be reversed because his providing the false information did not materially impede the administration of justice because it only created a minimal delay in the officer identifying and arresting him.

¶ 17 The defendant cites *People v. Taylor*, 2012 IL App (2d) 110222, to support his argument. In *Taylor*, a police officer saw the defendant crossing a street and recognized him as Donnell Taylor because the officer had previously arrested him. *Id.* ¶ 3. The officer knew that the defendant in *Taylor* had an outstanding warrant and there was a photo of the defendant on the visor of the officer's patrol car, along with photos of other individuals with outstanding warrants. *Id.* The officer ran a record check, and the database confirmed that there was an active warrant on the defendant. *Id.* The officer requested identification from the defendant because he was not 100% certain it was Donnell Taylor. *Id.* ¶ 4. The defendant claimed to have no identification and provided a false name and date of birth, after which the record check returned no such person. *Id.* The officer warned the defendant that he knew his name was Donnell Taylor, said that he would be arrested for providing false information, and told him, " 'This is your chance to tell the truth.' " *Id.* The defendant again gave the false name, but after a few minutes of conversation, the officer said to the defendant, " 'Hey, Donnell,' " and the defendant responded, " 'Yeah?' " *Id.* The officer then arrested the defendant. *Id.* The entire encounter—from the time the officer approached the defendant until he arrested him—took less than 10 minutes. *Id.* An identification card bearing the defendant's name was subsequently discovered at the police department. *Id.* After a jury trial, the defendant was convicted of obstructing justice. *Id.* ¶ 6.

¶ 18 On appeal, the defendant in *Taylor* argued that the evidence was insufficient to support his conviction because the false information he provided did not materially impede the officer's investigation because the defendant was arrested within 10 minutes of the officer approaching him, notwithstanding the false information he provided. *Id.* ¶¶ 8-9. The defendant in *Taylor* cited the Illinois Supreme Court case of *People v. Comage*, 241 Ill. 2d 139 (2011)—which the defendant in the instant case also cites—in which the defendant was convicted of obstructing justice for concealing evidence by throwing a crack pipe over a fence while he was fleeing from police officers. *Taylor*, 2012 IL App (2d) 110222, ¶ 10. In *Comage*, because the officers observed the defendant throw the pipe, they were able to retrieve it within 20 seconds. 241 Ill. 2d at 140-41.

¶ 19 The provision of the statute applicable to *Comage* provides: " 'A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution *** of any person, he knowingly commits any of the following acts: (a) *** conceals *** physical evidence ***.' " *Id.* at 143 (quoting 720 ILCS 5/31-4(a) (West 2006)). The *Comage* court noted that the

obstructing justice statute provided no definition of the word "conceal" (*id.* at 144) and resolved to discover whether the evidence in that case was "concealed" within the meaning of the statute (*id.* at 140). In determining the issue, the court in *Comage* observed two dictionary definitions of the word "conceal," one of which was relied on by the State and the other by the defendant (*id.* at 144-45) and discussed at length different cases in which courts analyzed whether defendants concealed evidence in ways sufficient to satisfy the requirements of, *inter alia*, the obstructing justice statute (*id.* at 145-50).

¶ 20    Exclusively within the context of determining the definition of the word "conceal," the supreme court indicated that, in enacting the obstructing justice statute, "the legislature intended to criminalize behavior that *actually* interferes with the administration of justice, *i.e.*, conduct that 'obstructs prosecution or defense of any person.' " (Emphasis in original.) *Id.* at 149. In determining whether the defendant in *Comage* concealed evidence, the court emphasized that the officers observed the defendant throw the contraband and recovered the items within 20 seconds. *Id.* at 150. On that basis, the court concluded that, although the contraband was out of the officers' sight for a brief period of time, the defendant's conduct of throwing it over the fence did not materially impede the investigation. *Id.* Accordingly, the court concluded that the defendant did not "conceal" the items within the meaning of the statute and reversed his conviction for obstructing justice. *Id.* at 150-51.

¶ 21    Subsequently, the *Taylor* court in the Second District widened the scope of *Comage*—the conclusion of which was applicable solely to the issue of obstructing justice by concealing evidence—by applying it to the issue of obstructing justice by providing false information. The court reversed the defendant's conviction, holding that the State did not prove that the defendant's conduct of providing the false information materially impeded the administration of justice because the officer arrested the defendant almost immediately, notwithstanding the false information. *Taylor*, 2012 IL App (2d) 110222, ¶ 19.

¶ 22    The court in *Taylor* also considered *People v. Baskerville*, 2012 IL 111056, ¶ 1—which is also cited by the defendant in the instant case—in which the Illinois Supreme Court considered "whether the offense of obstructing a peace officer *** (720 ILCS 5/31-1 (West 2006)) necessitates proof of a physical act, and whether the evidence was sufficient to support [the] defendant's conviction." The court in *Baskerville* held that "knowingly furnishing a false statement to police may constitute obstruction of a peace officer *** where the statement interposes an obstacle that impedes or hinders the officer and is relevant to the performance of his authorized duties." *Id.* ¶ 38. Relying on this principle, the court in *Taylor* broadened the holding in *Baskerville* by applying it to the issue of obstructing justice by furnishing false information, stating that "*Baskerville* confirms that the relevant issue in weighing a sufficiency-of-the-evidence challenge to a conviction for obstruct[ing] *** justice is whether the defendant's conduct actually posed a material impediment to the administration of justice." *Taylor*, 2012 IL App (2d) 110222, ¶ 17.

¶ 23    As noted, the defendant in the instant case cites *Taylor* to support his argument that his conviction must be reversed because the State did not prove that his furnishing the false information resulted in a material impediment to the administration of justice because the false information caused only a "minimal delay in the officer identifying and arresting him." Post-*Taylor*, this Fifth District court addressed the same issue in *People v. Casler*, 2019 IL App (5th) 160035. In *Casler*, the defendant was arrested after providing a false name to a police officer and was subsequently charged with and convicted of obstructing justice. *Id.* ¶¶ 1-3. On

appeal, the defendant in *Casler* argued that the evidence was insufficient to support his conviction because the State failed to show that his providing the false information impeded the administration of justice because he was arrested within minutes of giving the false information. *Id.* ¶ 44. Like the defendant in the instant case, the defendant in *Casler* also cited *Taylor* to support his position. *Id.* ¶ 37.

¶ 24    Because we are not bound by the decisions of equal courts in other districts, we decline to follow *Taylor*. See *O'Casek v. Children's Home & Aid Society of Illinois*, 229 Ill. 2d 421, 440 (2008). As we observed in *Casler*, "*Comage*—upon which *Taylor* relied—was decided within the parameters of the supreme court's sole mission to determine the meaning of the word 'conceal' as provided in the obstructing justice statute (241 Ill. 2d at 140) because the plain language of the statute provided no definition (*id.* at 144)." *Casler*, 2019 IL App (5th) 160035, ¶ 44. We further noted in *Casler* that the *Taylor* court did not apply *Comage* to determine the definition of "furnishing false information." *Id.* We acknowledged that a court's interpretation of a statute is considered a part of the statute unless the legislature amends the statute contrary to that interpretation and that the *Comage* court's interpretation of the word "conceal" ultimately incorporated a requirement of a material impediment to the administration of justice. *Id.* ¶ 45. We emphasized, however, that the *Comage* court precisely and specifically set forth the issue to determine what it means to conceal evidence, and we refused to broaden that application to encompass issues involving the furnishing of false information as did the court in *Taylor*. *Id.* Accordingly, consistent with our decision in *Casler*, we decline to follow *Taylor* and also decline to expand the *Baskerville* holding, which addressed resisting or obstructing a peace officer (720 ILCS 5/31-1 (West 2006)), to apply to the issue in this case, which involves obstructing justice (720 ILCS 5/31-4 (West 2016)), a different statute with different elements. See *Casler*, 2019 IL App (5th) 160035, ¶ 46.

¶ 25    Here, the State cites *People v. Davis*, 409 Ill. App. 3d 457, 458 (2011), a Fourth District decision involving obstructing justice where officers were seeking a fugitive named Bates when they arrived at the residence where the defendant was staying and inquired on the whereabouts of Bates. The defendant responded that she had not seen Bates (*id.*) but eventually admitted that she knew Bates had outstanding warrants and that he was inside the home (*id.* at 459). The defendant was convicted of obstructing justice for furnishing false information. *Id.* On appeal, the defendant cited *Comage* and posed the argument that she did not materially impede the investigation because she confessed shortly after providing the false information. *Id.* at 461.

¶ 26    The *Davis* court affirmed the defendant's conviction (*id.* at 463), holding that the "[d]efendant's interpretation of the supreme court's holding in *Comage* is too expansive" (*id.* at 461). The court distinguished *Comage*, which was based on concealing evidence, rather than furnishing false information. *Id.* at 462. The court also compared cases in which a defendant places evidence out of sight momentarily—an act that "does not make recovery of the evidence substantially more difficult or impossible"—to those involving the furnishing of false information, where "the potential that the investigation will be compromised is exceedingly high, which is why such a crime may be completed in a very short period of time—indeed, it may be completed at the moment such false information is provided." *Id.* The *Davis* court concluded that this was "precisely what happened in this case" (*id.*) and affirmed the defendant's conviction (*id.* at 463).

¶ 27 For the aforementioned reasons, we refuse to follow *Taylor*, we agree with *Davis*, and, consistent with our holding in *Casler*, we find that there is no requirement for the defendant's conduct to result in a material impediment to the administration of justice to prove obstructing justice by providing false information. There is sufficient evidence in this case to prove that the defendant obstructed justice by knowingly providing false information to Deputy Bob Fritcher, with the intent to prevent his apprehension. See 720 ILCS 5/31-4(a)(1) (West 2016). Accordingly, we affirm the defendant's conviction.

¶ 28                              B. Reduction of Conviction

¶ 29 The second issue on appeal is whether the defendant's conviction of obstructing justice (*id.* § 31-4(a)) should be reduced to obstructing identification (*id.* § 31-4.5). The defendant contends that his conduct "at most" constitutes obstructing identification because the charge of obstructing justice "requires that the conduct be a material impediment to a person's apprehension." Per our conclusion, *supra*, to prove obstructing justice in the context of furnishing false information, there is no requirement for the defendant's conduct to cause a material impediment to the administration of justice, and there is sufficient evidence here to support the defendant's conviction because his conduct satisfies the elements of the obstructing justice statute. See *id.* § 31-4(a). Accordingly, on that basis, we reject the defendant's argument that his conviction should be reduced and affirm the conviction.

¶ 30 Nevertheless, *arguendo*, we will address the merits of the defendant's argument. The obstructing identification statute provides, in relevant part, as follows: "(a) A person commits the offense of obstructing identification when he *** intentionally or knowingly furnishes a false or fictitious name, residence address, or date of birth to a peace officer who has: *** (2) lawfully detained the person ***." *Id.* § 31-4.5(a)(2). The obstructing justice statute provides, in relevant part, as follows: "(a) A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution *** of any person, he *** knowingly commits any of the following acts: (1) *** furnishes false information[.]" *Id.* § 31-4(a)(1).

¶ 31 The defendant attempts to frame this issue as one of statutory construction. In that regard, he references the rule of statutory construction that "where there exists both a general and specific statutory provision relating to the same subject, the specific provision controls and should be applied." *Moore v. Green*, 355 Ill. App. 3d 81, 88 (2004). Applying that principle, the defendant argues that because the obstructing identification statute sets forth specific conduct of furnishing a false name, address, or date of birth while being lawfully detained, and the obstructing justice statute sets forth the general conduct of furnishing false information, the obstructing identification statute prevails and should control in this case. The defendant further contends that this rule of statutory construction "is a limit on prosecutorial charging discretion" and claims that his conviction should be reduced based on this rule and the rule of lenity. We disagree.

¶ 32 At the outset, we note that the defendant cites no authority to support the claim that the rule of lenity applies to reduce his conviction. Pursuant to the rule of lenity, "a court strictly construes ambiguous criminal statutes to afford lenity to the accused." *People v. Jackson*, 2011 IL 110615, ¶ 21. Although the defendant identifies this issue as one of statutory interpretation, he alleges no statutory ambiguity, nor does he explain how or why the rule of lenity applies. Accordingly, we reject any claims regarding the rule of lenity and we refuse to consider this issue as one of statutory construction.

¶ 33    Even assuming, *arguendo*, that this issue is one of statutory construction, the defendant offers no authority to support his allegation that the above rule of statutory construction limits a prosecutor's charging discretion. The defendant references *People v. Bohannon*, 403 Ill. App. 3d 1074 (2010), to support his argument that a specific statutory provision is given priority over a general one when both are present and relate to the same subject. In *Bohannon*, our Fifth District court affirmed the dismissal of a charge of obstructing a peace officer (*id.* at 1079), described the correlating statute as a "broad mandate" (*id.* at 1077) and held that the Illinois Vehicle Code—rather than the obstructing a peace officer statute—governed the defendant's specific conduct of refusing to produce his identification and insurance card upon an officer's request (*id.* at 1078).

¶ 34    In this case, the defendant concedes that he obstructed identification because the officer pulled him over for a license plate violation—which was a lawful detention—and then he gave the officer a fictitious name and birthday—which is the conduct prohibited by the obstructing identification statute. Applying *Bohannon*, the defendant argues that his conviction should be reduced because he should have been charged under the obstructing identification statute, which governs his specific conduct, rather than under the obstructing justice statute, which governs more general conduct. We disagree.

¶ 35    The defendant's reliance on *Bohannon* is misplaced. In *Bohannon*, the circuit court *dismissed the charge* of obstructing a peace officer, and the State appealed. *Id.* at 1075. This court affirmed the circuit court's decision, concluding that the defendant's conduct was insufficient to support the charge of obstructing a peace officer. *Id.* at 1075, 1079. In contrast, in this case, the circuit court *denied* the defendant's motion to dismiss the obstructing justice charge, the case proceeded to a trial, the jury found the defendant guilty beyond a reasonable doubt of obstructing justice, and, as previously discussed, we affirm the conviction because we conclude that the defendant's conduct supports both the charge and the conviction of obstructing justice.

¶ 36    Moreover, in *Bohannon*, this court conducted statutory interpretation, as we explored the meaning of the words "resist" and "obstruct" as set forth in the obstructing a peace officer statute, which preceded our determination that said statute did not apply in that case. *Id.* at 1077, 1079. Here, because there is no need to interpret a statute, we find the defendant improperly framed this issue as one of statutory construction. Accordingly, we find *Bohannon* inapposite and decline to apply it to this case.

¶ 37    Finally, we address the defendant's argument that charging him with obstructing justice "negates the purpose of [the obstructing identification] statute entirely" and "the misdemeanor offense of [obstructing] identification is rendered superfluous if all such conduct can be charged as [obstructing] justice." This is incorrect. All conduct chargeable under the obstructing identification statute is not automatically chargeable under the obstructing justice statute, as the obstructing justice statute contains a key requirement that the obstructing identification statute lacks. Namely, the obstructing justice statute requires the defendant to knowingly furnish false information while possessing a requisite *intent* to prevent the apprehension of any person. See 720 ILCS 5/31-4(a)(1) (West 2016). Conversely, the obstructing identification statute has no requirement of intent. See *id.* § 31-4.5. Accordingly, the proscribed conduct differs between the statutes, there are different elements of proof between the statutes, and we reject the defendant's suggestions to the contrary.

¶ 38    Having refused to categorize this issue as one of statutory construction, we find it more appropriately reviewed as one of prosecutorial discretion. Similar to this case is *People v. Gordon*, 64 Ill. 2d 166, 168 (1976), in which the defendant was charged with, *inter alia*, conspiracy to commit theft and theft over $150—both felonies under the Criminal Code of 1961. The defendant in *Gordon* argued that he was not subject to prosecution under the statute, but only under what was known as the Real Estate Brokers Act (Act) (Ill. Rev. Stat. 1971, ch. 114½ *et seq.*), for commingling his own funds with those of a client—chargeable as a misdemeanor under the Act—because the charges arose in connection with his services as a real estate broker. 64 Ill. 2d at 168-69.

¶ 39    Like the defendant in the instant case, the defendant in *Gordon* argued that the specific provisions of the Act applied, rather than the more general subject matter of the Criminal Code of 1961. *Id.* at 169. The defendant contended that the will of the legislature would be circumvented if the special legislation within the Act did not take precedence. *Id.* The court in *Gordon* disagreed. Analogous to this case, the *Gordon* court observed that the two statutes involved there did not proscribe the same conduct, as the Criminal Code of 1961 required the prosecutor to show a specific intent to commit the applicable offenses and the Act did not. *Id.* at 169-70.

¶ 40    Although the defendant in this case alleges that the above rule of statutory construction "is a limit on prosecutorial charging discretion," he cites no authority to support this claim. It has long been held that " '[t]he State's Attorney is the representative of the People and has the responsibility of evaluating the evidence and other pertinent factors and determining what offense can properly and should properly be charged.' " *People v. Gordon*, 32 Ill. App. 3d 378, 381 (1975) (quoting *People v. Rhodes*, 38 Ill. 2d 389, 396 (1967)). Additionally, "when a defendant's act has been in violation of more than one statute, and each statute requires different proof for conviction (though there may be some overlapping), or provides for different defenses, the defendant may be prosecuted under the statute which provides for the greater penalty." *Gordon*, 64 Ill. 2d at 170. "Moreover, if the conduct for which a defendant is prosecuted constitutes a misdemeanor under one statute and a felony under another, he may be prosecuted for the felony." *Gordon*, 32 Ill. App. 3d at 380.

¶ 41    As noted, the defendant in this case offers no authority to circumvent these longstanding principles of liberal prosecutorial charging discretion. The defendant's conduct supports a charge under either statute. Accordingly, we assign no error to the prosecutor's decision to charge the defendant with obstructing justice (see *id.*), and we hold that the circuit court did not err by refusing to dismiss the obstructing justice charge. The jury found the defendant guilty as charged beyond a reasonable doubt, and we find the evidence sufficient to support the conviction. For these reasons, we reject the defendant's argument that his conviction should be reduced from obstructing justice (720 ILCS 5/31-4(a) (West 2016)) to obstructing identification (*id.* § 31-4.5).

¶ 42                                    C. Prison Sentence

¶ 43    The next issue on appeal is whether the defendant's 30-month prison sentence was excessive. The State indicates in its brief that the defendant is no longer incarcerated, and the defendant concedes in his reply brief that the issue is moot because the entire sentence has been served and this court cannot grant him the requested relief to reduce the sentence. "A question is said to be moot when no actual controversy exists or where events occur which render it

- 10 -

impossible for the court to grant effectual relief." *People v. Lynn*, 102 Ill. 2d 267, 272 (1984). Appellate courts ordinarily do not have jurisdiction to consider issues that are moot. *In re Joseph M.*, 405 Ill. App. 3d 1167, 1172 (2010). Even if events occur to render an issue moot while a case is pending on appeal, appellate courts will not generally issue advisory opinions. *In re Marriage of Donald B.*, 2014 IL 115463, ¶ 23. There are exceptions to the mootness doctrine (see *In re Alfred H.H.*, 233 Ill. 2d 345, 355-62 (2009)), which we need not discuss, as none of those exceptions apply here. For these reasons, we lack jurisdiction to consider this issue and dismiss it as moot. See *Lynn*, 102 Ill. 2d at 272.

¶ 44                                    D. Reimbursement Fee

¶ 45        The final issue on appeal is whether the fee imposed by the circuit court to reimburse the public defender should be vacated for lack of a hearing, pursuant to section 113-3.1(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/113-3.1(a) (West 2016)). "Whether the [circuit] court properly imposed the public-defender-reimbursement fee is a question of law, which we review *de novo*." *People v. Aguirre-Alarcon*, 2016 IL App (4th) 140455, ¶ 9.

¶ 46        Pursuant to section 113-3.1(a), when counsel is appointed to represent the defendant, the circuit court may enter an order requiring the defendant to reimburse the county or the State for the representation. 725 ILCS 5/113-3.1(a) (West 2016). The section further provides: "In a hearing to determine the amount of the payment, the court shall consider the affidavit prepared by the defendant *** and any other information pertaining to the defendant's financial circumstances ***." *Id.* The hearing shall be conducted on motion of the State or on the court's own motion at any time after defense counsel is appointed but no longer than 90 days after a final order disposing of the case at the trial level is entered. *Id.* The hearing is mandatory. *People v. Darr*, 2018 IL App (3d) 150562, ¶ 102.

¶ 47        Here, the defendant argues that there was no hearing to determine the amount of the payment and to consider his financial circumstances. See 725 ILCS 5/113-3.1(a) (West 2016). Accordingly, the defendant contends that the appropriate remedy is to vacate the public defender reimbursement fee outright. See *Darr*, 2018 IL App (3d) 150562, ¶ 104 (public defender reimbursement fee vacated outright where there was not "some sort of hearing" on the issue); *People v. Daniels*, 2015 IL App (2d) 130517, ¶¶ 29-30 (public defender fee vacated outright where no hearing was deemed to have occurred where circuit court made no reference to fee during sentencing hearing but subsequently imposed the fee in the absence of the parties).

¶ 48        Conversely, the State maintains that, although deficient, a hearing still took place and the appropriate remedy would be to remand this issue for the circuit court to fully comply with section 113-3.1(a) by conducting a proper hearing. See *People v. Hardman*, 2017 IL 121453, ¶ 66 (cause remanded for a proper hearing where, despite the deficiencies, "some sort of a hearing" occurred). We agree with the defendant.

¶ 49        Although the Illinois Supreme Court in *Hardman* applied a liberal definition of "some sort of a hearing" (*id.* ¶¶ 64, 66), in that case, the State actually raised a motion to reimburse the public defender as required by the statute (*id.* ¶ 10). The court in *Hardman* concluded that—deficiencies notwithstanding—"some sort of a hearing" occurred because a hearing occurred within the requisite 90-day time limit, the parties were present, and the issue of the public defender fee was considered. *Id.* ¶ 66. In this case, the public defender fee was not considered. The cost sheet was present and referenced at the sentencing hearing, and costs

were discussed in general; however, no motion was raised on the public defender reimbursement fee, nor was the fee mentioned in any capacity. We find this insufficient to constitute "some sort of hearing" that merits a remand to fully comply with section 113-3.1(a) (725 ILCS 5/113-3.1(a) (West 2016)). Accordingly, we vacate the public defender reimbursement fee.

¶ 50                                  III. CONCLUSION

¶ 51        For the foregoing reasons, we affirm the defendant's conviction and vacate the public defender reimbursement fee.

¶ 52        Affirmed in part and vacated in part.